1  United States of America,       )
2                    Plaintiff,    )   *E-FILED - 1/15/13*
                                   )
3        v.                        )
                                   )   No. CR 12-00464-DLJ
4  James Gould, Jr.                )
                                   )   **ORDER**
5                    Defendant.    )
   _____ )

On November 15, 2012 defendant James Gould, Jr. ("Gould") filed a motion to suppress statements he made to government agents. On December 6, 2012, this Court held a hearing on the matter. Attorney Timothy Lucey appeared on behalf of the United States and defendant was represented by Attorney Diana Garrido. At that hearing the Court set an evidentiary hearing in the matter, which hearing was held on December 20, 2012. Having reviewed the papers and having heard oral argument and evidence on this matter, the Court finds the following.

I.   Background

Gould has been charged in a two-count indictment with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2)(A); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The charges are based in part upon statements Gould made to interrogating FBI agents during the execution of a search warrant at the condominium where Gould lives with his parents. Gould has brought a motion to suppress those statements alleging that they were violative of his due process as the interrogation took place when he was in custody and that the statements were taken without the benefit of a Miranda warning.

The parties did not agree on all of the facts regarding the search, which led to the evidentiary hearing. After reviewing the briefing and having heard testimony in the matter, the Court makes the following findings.

On June 24, 2011, Magistrate Howard Lloyd authorized a search warrant for the search of the premises at 5561 Eagles Lane, Apartment 2, San Jose, California. See Exhibits 1 and 2, attached to Declaration of Patrick Mar ("Mar Decl."). The search warrant was executed on June 27, 2011, at approximately 6:22 a.m.

Gould states that he was awakened by the sound of loud banging noises. See Declaration of James Gould, Jr. ("Gould Decl."), attached to the Motion as Exhibit A, at ¶ 2. He states that when he looked out his bedroom window, he saw at least ten FBI agents yelling and pounding on the front door of the condominium where Gould lives with his parents.

Gould asserted that the agents stated that they had "a warrant," but that he did not hear anyone say what kind of warrant or what the warrant was for. On cross examination Gould testified that while he did not specifically hear the agents say that the warrant was a search warrant, they may have done so. Fourteen agents entered into the Gould's condo. A San Jose police officer with the group left at that point. Mar Decl., ¶9. The Goulds' condo is small two story unit.

The agents entered with their guns drawn in order to secure the premises. After searching the premises they holstered their guns. FBI Agent Mar's declaration and

2

1   testimony were consistent that after the residence was deemed
2   secure by the search team, the search team advised Gould and
3   his parents that the FBI was present to conduct a search
4   pursuant to a search warrant; that no one was under arrest; and
5   that the occupants were free to leave if they so chose. Mar
6   further testified that the agents advised Gould and his family
7   that they could move around the apartment while the search was
8   being conducted but would need to be accompanied by an agent at
9   all times.

10   Gould was in his boxer shorts when the agents arrived.
11   Gould requested to dress. He was escorted upstairs flanked by
12   two agents.  Agents removed the handcuffs from Gould at that
13   point in order permit him to get dressed. Mar Decl., ¶11. The
14   agents retrieved clothing for him and he changed in the
15   bathroom, although he was not permitted to close the door.
16   While in his declaration filed before the hearing Gould
17   asserted that on this walk up the stairs the agents still had
18   their weapons drawn, at the hearing he concurred with the
19   agents that they had their weapons holstered at this point.

20   As it relates to the interview with Gould, the agents
21   testified that they asked Gould if he would be willing to speak
22   with them. They stated that they asked him these questions
23   outside the presence of his parents in order to protect his
24   privacy.  Gould did not remember specifically what the agents
25   told him.

26   Gould agreed to speak with agents Kelley and Mar. Gould
27   was escorted to his parents' bedroom. Mar Decl., ¶11. Gould was

3

1 not handcuffed or otherwise restrained while seated in his
2 parents' bedroom. After the evidentiary hearing there was a
3 factual discrepancy remained regarding the interview. Agent
4 Mar states that during the course of the interview, Gould's
5 father, having asked other members of the search team if he
6 could leave to go to work, entered the bedroom where they were
7 conducting the interview, dressed for work, and left. Gould
8 testified that he did not meet with the agents until after his
9 father had already left the house.

10 At the end of the interview Gould signed a consent to
11 permit the government to assume his on-line identity. Gould's
12 declaration indicated that he did not think he was free to
13 refuse to sign the form, but at the hearing there was no
14 testimony that this was other than Gould's subjective belief as
15 he said he did not remember what the agents told him about this
16 form but that he signed it.

17 Among other statements, Gould told the agents that he was
18 responsible for the child pornography that was the subject of
19 the search warrant and that his father was not involved in, or
20 responsible for, that conduct. Mar Decl., ¶14. There was no
21 evidence that during the course of their time at the residence,
22 including the conduct of the interview, the agents ever harmed
23 or threatened Gould.

24 When they finished speaking with Gould the agents reminded
25 him that he was free to leave or to stay, but if he chose to
26 stay, he would have to remain in visual sight of one of the
27 agents until they had completed the search of the apartment.

4

Mar Decl., ¶16. Gould testified that it was only at this point after he had given his statement that he understood he could leave.

The FBI seized a number of computers and a bag of what appeared to be drugs.

## II. Legal Standard

Miranda warnings are only required if the suspect is subject to custodial interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966). If the suspect is not in "custody," no warnings are required. Whether a person is in custody for purposes of Miranda is evaluated based on the totality of the circumstances. <u>United States v. Beraun-Panez</u>, 812 F.2d 578, 580 (9th Cir.), as amended, 830 F.2d 127 (9th Cir. 1987). There is no requirement that an individual be "formally taken into police custody." A person is not in custody for Fifth Amendment purposes unless there was either a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (holding that <u>Miranda</u> warnings are not required when a defendant, not parolee or under arrest, voluntarily accompanied police to station, talked to police for thirty minutes, and then was permitted to leave).

The Supreme Court has limited the remedy for a <u>Miranda</u> violation to the exclusion of testimonial evidence obtained in violation of <u>Miranda</u>. <u>Michigan v. Tucker</u>, 417 U.S. 433, 451-52 (1974). Other evidence derived from the excluded testimonial evidence can be used at trial unless it is tainted by a due

process violation distinct from the failure to give Miranda warnings. Oregon v. Elstad, 470 U.S. 298, 318 (1985). Testimonial evidence obtained in violation of Miranda is also admissible to impeach a defendant's contradictory trial testimony. Id. at 307.

III. Discussion

Theسسsole issue presented here is whether defendant should be considered to have been "in custody" for purposes of the interview which occurred in his home with the FBI agents. In cases in which the suspect has not formally been taken into police custody, a suspect may still be considered to have been "in custody" for purposes of Miranda if the suspect has been "deprived of his freedom of action in any significant way." 384 U.S. at 444.

Whether someone is in custody is determined by applying an objective test. Stansbury v. California, 511 U.S. 318, 323 (1994). Courts examine the totality of the circumstances surrounding the interrogation. Thompson v. Keohane, 516 U.S. 99, 112 (1995). Courts are instructed to ask whether a reasonable person in those circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave." Id.

Courts have generally been much less likely to find that an interrogation in the suspect's home was custodial in nature. United States v. Ritchie, 35 F.3d 1477, 1485 (10th Cir. 1994). Moreover, an interrogation conducted within a suspect's home is not *per se* custodial. United States v. Craighead, 539 F.3d

6

1073, 1083 (9th Cir. 2008).

Defendant relies primarily on the Ninth Circuit's decision in the Craighead case. In Craighead, the suspect, an Air Force technician, came to the attention of the FBI through his sharing of child pornography images over the internet. Id. at 1077. The FBI obtained a search warrant for his residence on the Air Force Base, and one morning eight law enforcement officers from three different agencies (the FBI, the local sheriff's department, and members of the Air Force Office of Special Investigation) went to his home to execute the search warrant. Id. at 1078. All of the agents were armed, and some of them un-holstered their firearms in Craighead's presence during the search. Id. Two non-agents accompanied the law enforcement personnel: an Air Force Sergeant there for the suspect's emotional support, and an FBI evidence control clerk. Id.

During the search of Craighead's residence, two officers, an FBI agent and sheriff's detective, escorted him to a storage room at the back of his residence for "a private conversation." Id. Craighead was told the interview was voluntary. Id. The back storage area was cluttered with boxes, and the interview was conducted while sitting on boxes or the floor in the room. Id. The agents closed the door to the storage room after the three men entered, and one officer, wearing a flak jacket and visible sidearm, stood in front of the closed door, with his back to the door, facing Craighead. Id. The Air Force Sergeant, brought to the search to provide emotional support to

7

Craighead, was not permitted to accompany him into the back room. Id.

The interviewing agent could not recall whether she informed Craighead that he was free to leave after they entered the storage room and she closed the door. Id.

In Craighead, the court recognized that an in-home interrogation may be considered custodial when, considering the "totality of circumstances," the home became a "police-dominated environment." Craighead, 539 F.3d at 1083-84. The court looked to the following factors as relevant to the inquiry of whether the home had became "a police-dominated environment": (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which such statements were made. Id. at 1084.

Based on the circumstances outlined above, the Ninth Circuit determined that interview was custodial, and thus, required a Miranda admonition . Id. at 1089. The court found that the presence of multiple agencies could have made it unclear to Craighead that he was free to leave. Id. Additionally, the Court focused on the fact that while two detectives were questioning Craighead another stood blocking the door. Id. at 1086. Finally, the fact that the FBI excluded the Air Force Sergeant who was there to provide support to

8

Craighead's emotional state, indicated that he was not in control of his environment because he could not even invite someone into a room of his own house. Id. at 1087.

The facts as developed here are distinguishable from Craighead. The only agents were FBI agents; they announced that the warrant was a search warrant; while the agents were wearing protective gear and had guns drawn when they entered the apartment, the guns were holstered shortly after entry; the FBI told all the residents they were free to leave; defendant's father was permitted to leave; defendant observed his father leave the premises; and that defendant's interview was conducted in the "familiar surroundings" of his parents' bedroom. When defendant and the two agents met in the bedroom, the door was not blocked by an agent. There is no evidence that defendant was harmed or coerced into giving his statement.

In addition to Craighead, the defense also cites to the case of United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970). In Bekowies, the Ninth Circuit affirmed a district court suppression of statements made to law enforcement, finding that the circumstances amounted to custody. However, in that case, agents, armed with an arrest warrant for Bekowies' roommate, had proceeded to follow Bekowies around the inside and outside of the house, repeatedly berating him about the whereabouts of the roommate. The court's determination that suppression was appropriate was based on the fact that the agents had "questioned [defendant] closely and persistently" inducing in defendant a belief that he was no longer free to go about his

9

business without significant restraint." Id. Here, there is no allegation of close and persistent questioning of the type found in Bekowies.

Based on the facts presented through the papers and at the evidentiary hearing, the Court finds that defendant's interrogation was not custodial and therefore there was no need for Miranda warnings. The Court finds that there is no basis for suppressing defendant's statements and the motion is DENIED.

IV. Conclusion

The Court holds that any statements by Gould were legally obtained and the Motion to Suppress is DENIED.

IT IS SO ORDERED.

Dated: January 15, 2013

_____
D. Lowell Jensen
United States District Judge

10

Copy of Order E-Filed to Counsel of Record on 1/15/13:

11